[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a limited action for dissolution of marriage wherein the plaintiff seeks, in addition to a dissolution, custody of minor children, child support, an equitable division of real and personal property and other appropriate equitable relief.
By way of answer the defendant has admitted the allegations of the complaint but has filed a cross-complaint seeking, in substance, the same relief requested by the plaintiff.
The Court enters judgment on the complaint and the cross-complaint is dismissed as moot.
Jurisdictional Findings
The parties intermarried at Enfield, Connecticut on April 30, 1988. The plaintiff's maiden name was Anna M. Grillo.
The plaintiff has resided continuously in Connecticut for at least one (1) year next before the date of the filing of her complaint.
There are three minor children issue of the marriage, namely John V. Nadeau, born November 19, 1988; Thomas A. Nadeau, born April 26, 1991; and Jamey L. Nadeau, born July 28, 1994. No other minor children were born to the plaintiff since the date of the marriage of the parties.
Neither party is receiving assistance from the State of Connecticut.
Factual Findings and Orders
CT Page 6215
The marriage between the parties has broken down irretrievably and a decree of dissolution may enter on said grounds.
The plaintiff's maiden name of Grillo is ordered restored to her.
The Court is cognizant of, and has considered, the provisions of Connecticut General Statutes § 46b-81 and § 46b-82 in entering its orders of alimony and distribution of marital assets.
Custody: The parties shall have joint legal custody of the minor children. The primary residence shall be with the plaintiff wife and the defendant husband shall have reasonable rights of visitation.
Child Support: The Court finds the defendants representations as to his income as shown on his financial affidavit to be credible. The income information was substantially corroborated by the testimony of Michael Krol, the husband's accountant. Using a net weekly income of $406 for the defendant and a net weekly income of $120 for the plaintiff, the child support guidelines call for a payment of $180 weekly by the non-custodial parent. Therefore, in accordance with support guidelines, the defendant is ordered to pay $180 per week as child support.
In addition the defendant has an arrearage of $1595 in child support pendente lite as of May 11, 1998. He is ordered to pay an additional $30 per week until said arrearage has been paid.
The orders for child support and arrearage are to be enforced by wage garnishment.
Alimony: Alimony, if awarded, is done pursuant to Connecticut General Statutes § 46b-82. The parties married in April 1988. The wife was 17 years of age, a high school student and pregnant with her first child. The husband was 19 years old and without any particular job skills. He was, however, a hard worker and after a period of time working as a stock clerk, he got a job as an electrician's apprentice. He worked as much as 60 to 70 hours weekly, took the classes required to obtain his electrician's license, and he has been a licensed master electrician since 1996. He now owns his own business, JTN Electrical, Inc. He is CT Page 6216 hopeful that his business will grow, but there is, of course, no way to know what the future holds. The wife shows a gross income of $145 per week as a self employed day care provider, with a net income of $120. Child support is in addition to that. She claims to be also getting financial help from family although her financial affidavit does not include other sources of income and she lists debts only to Visa cards in the amount of $5800. There was no satisfactory explanation of how she makes up her weekly deficit between income and expenses of approximately $385. There was sufficient credible evidence for the Court to infer that the plaintiff has a male live-in companion who is contributing to the plaintiff's income or support. The plaintiff concedes he buys groceries from time to time and has lent her money also, although no such debt is shown on her financial affidavit. In short, the plaintiff's testimony as to her finances lacks credibility and does not give the court a clear and comprehensive financial picture.
The plaintiff ascribes the cause of the breakdown of the marriage to lack of attention by the defendant and to derogatory comments he made about her physical appearance. On the other hand the defendant was working very hard and long hours to both better himself and provide for his family. For whatever reason, it did not take long for the plaintiff to have an extra-marital affair. Approximately three months after her first child was born she had an affair with Kevin Hutton, whose testimony is found to be credible. Their sexual encounters went on for some three months, two to three times a week, and usually at the marital home. Thereafter, in 1994 and again in 1996 there were sexual relations between them and after the husband moved out of the marital home in March 97, Hutton moved in with the plaintiff and her children.
Subsequently she and Hutton ended their relationship and she now has another male live-in friend as referred to earlier. The primary reason for the breakdown is the plaintiff's attitude toward the defendant as shown by her willingness to enter into extra-marital affairs.
Both parties are in good health and while the husband probably has the potential to earn more than the wife, he has a heavy child support obligation with little, if any, excess to pay alimony. Because the breakdown is primarily the fault of the plaintiff, and in light of the other orders being entered and the criteria of § 46b-82 including the estate and needs of the parties, alimony is not awarded to either party. CT Page 6217
Real Estate: The parties jointly own the mutual residence located at 1 Kimberly Drive, Enfield, Connecticut. They agreed that it has a fair market value of $130000. There is a mortgage balance of approximately $89000, thus there is approximately $40000 to $41000 in equity on the property. The house was purchased in September 1995. The down payment of $30000 came from savings the husband accumulated from the date of the marriage. The wife seeks to have the house transferred to her, giving back a non-interest bearing note for $15000 payable when the youngest child reaches 18 years of age (2012) or upon her sooner remarriage or death. The husband seeks the sale of the house with him receiving the first $30000 of the net proceeds to compensate him for the down payment he contributed. Connecticut General Statutes § 46b-81
sets out the criteria for assignment of marital property.
From the testimony and evidence (plaintiff's exhibit B) it appears that foreclosure of the property is likely. The bank holding the mortgage has sent the plaintiff a notice of default and intent to foreclose, dated January 21, 1998. At that time the arrearage was $2110. While the plaintiff has apparently made some partial payment on the arrearage, there is still an arrearage and she has not cured the default. The weekly mortgage payment is $212 and according to her financial affidavit, her net weekly income is $240 (including pendente lite child support payments). While the plaintiff's financial picture is murky, as found earlier, it seems unlikely that she can maintain the marital home for very long, and foreclosure proceedings will not benefit either party. In addition, equitable considerations persuade the Court that the defendant should not have to wait until 2012 to receive his share of this asset, (without interest if the plaintiff's proposal is accepted).
While the defendant's earnings provided the money to purchase the home, that does not mean that the plaintiff's contribution in caring for three young children and maintaining the marital home was not a contributing factor to this marital asset. It is also noted that the residence required extensive renovation after it was purchased and most of the physical labor (although not all) was done by the defendant, his family and friends.
For these reasons the Court orders that the marital home be listed for sale with a real estate broker agreeable to both parties for sale at the fair market price of $130000. If the property is not sold within three months the sale price will be CT Page 6218 decreased to $125000 with like reductions at three month intervals until sold unless otherwise agreed by the parties. The wife shall have exclusive possession of the premises until sale and shall be responsible for mortgage payments while in possession. Upon the sale, after deduction of the mortgage balance and any credits to the defendant for any prior mortgage arrearages, and after deduction of the expenses of sale, the net proceed shall be split with 2/3 to the husband and 1/3 to the wife.
Medical Insurance: The plaintiff shall continue to maintain the existing medical insurance coverage for the minor children as long as it is available through the State of Connecticut at no cost. If that coverage is no longer available, the parties shall provide medical insurance for said minor children as may be available through their employment without cost. Otherwise they shall share equally the cost of unreimbursed medical, dental, optometric or other health related expenses.
Tax Exemptions: The husband shall be entitled to the tax deductions for the minor children John and Thomas, provided he is current in his support obligations as of December 31 of the calendar year for which the deductions are claimed, otherwise the wife shall be entitled to the deductions for that year.
The wife shall be entitled to the tax deduction for Jamey.
Life Insurance: The husband shall name the minor children as irrevocable beneficiaries on his life insurance policy in the amount of $125000 for so long as his support obligation continues.
Counsel Fees: Each party shall be responsible for his or her own counsel fees. Neither party is financially able to contribute to the other's counsel fees.
Debts: Each party shall be responsible for the debts shown in the "Liabilities" section of their respective financial affidavits.
Other: The parties shall endorse insurance checks from the carrier insuring the marital home which are in payment of smoke damage to the residence and said checks are to be paid to the cleaning service or services that performed smoke damage repairs or cleaning. Any funds not so expended are to be split equally by the parties. CT Page 6219
The defendant is to enroll in and complete the parenting education program within 75 days of this decision and is prohibited from filing any motions to modify this judgment until the parenting education program is complete. In addition, the clerk's office shall schedule this matter for compliance review on the short calendar docket for August 31, 1998. The plaintiff is not required to appear on that date and if the defendant has filed the appropriate notice or certificate of completion, his attendance will also be excused.
Klaczak, J.